[Civ. No. 1204.   Third Appellate District.—May 23, 1914.]

## H. BRIGGS, Appellant, v. A. J. HALL, Respondent.

Brokers—Sale of Real Estate—When Commission is Earned.—It is not necessary, in order to entitle a real estate broker to his commissions, that he should personally have conducted the negotiations between the principal and the purchaser leading to the sale, nor that he should have been present when the bargain was completed, nor that the principal should at the time have known that the purchaser was one found by the broker; it is indispensable and sufficient that the effort of the broker was the procuring cause of the sale, and that, through his agency, the purchaser was brought into communication with the seller, although the parties themselves negotiated the sale.

Id.—Action to Recover Commission—Evidence That Broker was not Procuring Cause.—In this action to recover a broker's commission for a sale of real property the evidence supports the finding that the plaintiff's assignor was not the procuring cause of the sale.

Id.—Breach of Contract—Sale by Principal for Less Than Agreed Amount.—In such action the evidence does not show a breach by the principal of a provision in the contract of agency not to sell the property for less than a stipulated amount.

Id.—Action for Commission—Jurisdiction of Superior Court.—Where an action is brought in the superior court to recover six hundred and fifty dollars as commission for a broker's sale of real estate, the court has jurisdiction to render judgment for two hundred and sixty dollars.

Id.—Amount in Controversy—Jurisdiction of Superior Court.—In ordinary legal actions the so called *ad damnum* clause of the complaint, when stated in good faith, affords the test of jurisdiction, and if the amount equals or exceeds three hundred dollars, the superior court obtains jurisdiction and may render judgment for any lesser sum the evidence may justify.

APPEAL from a judgment of the Superior Court of Sonoma County. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

L. G. Scott, and T. J. Butts, for Appellant.

Perrier & Libby, for Respondent.

BURNETT, J.—The action was brought on an assigned claim for a broker's commission in the sale of real estate. Attached to the complaint is the contract of agency executed by the owner of the property from which we quote as follows: "In consideration of their efforts to sell the within described property, I hereby appoint Lyman & Briggs of Sebastopol, California, to act as agents for the sale of said property for the sum of thirteen thousand dollars, and I agree not to offer the same for a less price before the expiration of this contract without the consent of said agents. I agree that in case of the sale of said property by said Lyman & Briggs, or should the purchaser receive information of said property through said agents, to pay them a five per cent commission on such sale, or exchange. . . . I reserve the right to sell said property myself, or to sell said property through the agency of any one else, but I hereby agree that in case such sale be made by myself, or through any other agency, in consideration of their services to pay said Lyman & Briggs a commission of two per cent on sale price. Number of acres 31¼. Price $13,000.00. . . . Personal property that goes with the place— All farming tools now on place, berry chests, apple boxes. First payment $6500. Terms on balance to suit purchaser, but not to run longer than three years."

The case was here before on an appeal from the order of the trial court granting defendant's motion for a new trial after a jury had awarded plaintiff the amount sued for. (*Briggs* v. *Hall*, 20 Cal. App. 372, [129 Pac. 288].) The order granting the motion for a new trial was affirmed on the ground of an erroneous instruction. It sufficiently appears from said opinion that said order could also have been upheld on the theory of a conflict in the evidence. And in this connection it may be well to allude to an erroneous implication as to the

case of *Newman* v. *Overland Pac. Ry. Co.*, 132 Cal. 74, [64 Pac. 110], involved in the following statement of *Briggs* v. *Hall*, 20 Cal. App., 374, [129 Pac. 288]: "We may consider any of these assignments with the exception possibly, of the insufficiency of the evidence. We speak of the last with some hesitancy because of the declaration made in *Newman* v. *Overland Pac. Ry. Co.*, 132 Cal. 74, [64 Pac. 110], that," etc. The fact is, that the quotation itself from the Newman case shows clearly enough that said order in question could have been affirmed on the ground that there was a substantial conflict in the evidence, but, through inadvertence, a doubt was suggested that really could not arise when the language of said quotation is properly considered.

The first contention of appellant here is that the firm of Lyman & Briggs was the procuring cause of the sale within the contemplation of the decisions. He cites, as illustrative of the familiar doctrine, *Duncan* v. *Kearney*, 72 Conn. 585, [45 Atl. 358], and *Justy* v. *Erro*, 16 Cal. App. 519, [117 Pac. 575]. In the former it is held that a real estate agent who first calls the attention of the purchaser to the land and advises him to buy it, is entitled to his commission though the deal is finally negotiated directly with the owner through the agent of the purchaser, the court saying: "The trial court might reasonably find the information given Smith (the purchaser) by the plaintiff, that the defendant's property on Prospect Street was for sale, with the advice to see the defendant in regard to the purchase, to be the foundation on which the negotiation resulting in such sale was begun."

In the Justy case it is declared that "It is not necessary that the broker should personally have conducted the negotiations between the principal and the purchaser leading to the sale, nor that he should have been present when the bargain was completed, nor that the principal should at the time have known that the purchaser was one found by the broker. It is indispensable and sufficient that the effort of the broker was the procuring cause of the sale, and that, through his agency, the purchaser was brought into communication with the seller, although the parties themselves negotiated the sale." The principle is undoubtedly well established and there is some evidence in the record to support the inference that plaintiff's assignors gave advice and information that led the vendee to

purchase the property. The trial court, however, found: "4. That said lands and premises were sold through the efforts of Hansen & Caya, real estate agents, located at Sebastopol, California.

"5. That said Lyman & Briggs were not the procuring cause of said sale; they did not procure a contract for the purchase of said premises from Geo. H. Johnson nor from any other person; they did not bring the parties together or introduce said Geo. H. Johnson to defendant herein."

There is no doubt that the sale was consummated through the efforts of said Hansen & Caya and there is also substantial support for finding No. 5.

Johnson, the purchaser, himself testified that "Mr. Morford called my attention to the Hall place in December of 1910. Then I met Mr. Caya about the middle of December. Mr. Caya and I went out to look at a piece of property beyond there. He says, 'Here's the Hall place, we have it listed.' There wasn't much said about it that I remember of until a short time before I bought the place. I saw Mr. Morford on the street and asked him if he thought it was a good buy. 'Yes, sir,' he said, 'it is a good buy; it will pay for the work and the interest.' Also a Mr. Ryan told me it was a good buy and my wife and I talked it over and made up our minds to buy it." It is true that the witness also talked with Lyman and Briggs about the property and they informed him of their contract of agency and advised him to purchase, but this was after Johnson had seen the place and after his said conversation with Morford and also with Caya. It also appears that Lyman & Briggs did not take Johnson to the place at any time nor introduce him to the owner of the property. It is therefore a fair inference that plaintiff's assignors were not the procuring cause of the sale.

Another theory upon which plaintiff claims the commission is that the property was sold by the owner for less than thirteen thousand dollars. The contract of agency, as already seen, provided for such contingency, and admittedly, if the owner violated said provision he would be liable for the commission.

It is true, though, that if he intended to rely upon this circumstance, according to the usual and orderly method of pleading he should have set it forth in his complaint. In one count

he might have presented the theory of a sale through the agency of his assignors and in another count, of a sale by the owner for less than thirteen thousand dollars, in violation of his agreement. The issue as to the two distinct contingencies, upon either of which he might recover, could thus have been formally and clearly presented. The complaint, though, as held in the former opinion, may be comprehensive enough to include the latter contention. At any rate, at both trials, the whole transaction was put in evidence, without objection, and the case was tried upon the theory that the violation by the owner of this agreement not to sell the property for less than thirteen thousand dollars was an issue in the case.

As to this, the position of appellant is that a rebate to the purchaser was made by agreement between the owner and Hansen & Caya of one-half of the commission, amounting to the sum of $317, and also of the sum of $280 by reason of a shortage in the acreage discovered by a survey of the land. In addition, it is claimed that some personal property not mentioned in said contract of agency was transferred as an additional inducement for the purchase of the said real estate.

There is, however, in the record, we think, support for the conclusion that there was no violation by the owner of his covenant not to sell for less than thirteen thousand dollars. He testified that he knew nothing of the rebate of commission until after the sale. He could not be held responsible, of course, for any private agreement of that character between the purchaser and the agent. We must accept his statement and assume that he acted in good faith.

There is also evidence that the agreement as to the survey of the land was subsequent to the agreement to purchase it for the sum of thirteen thousand dollars. Mr. Johnson testified: ''The next day, on the twelfth, after I gave him the check for five hundred dollars, the money was paid over and the mortgage was given that day, thirteen thousand dollars. Mr. Hall put up the deed while the title of the property was being perfected. I put up the money in the bank, six thousand five hundred dollars in drafts and six thousand five hundred dollars in mortgage.'' He also testified that ''We agreed to survey the place and if there was a shortage he would pay it back,'' and furthermore, that this was after the said transaction as to the deed and mortgage.

Of the personal property the farming implements were covered by the said contract of agency, the chickens were donated by the wife of the owner, and the only thing left, one small pig, is hardly of enough consequence for the law to regard.

One other consideration requires attention. It appears from the findings that the contract of agency relied upon by plaintiff was executed by the owner of the property and that within the time during which it was to be binding the property was sold by agents, Hansen & Caya, for the sum of thirteen thousand dollars. But, as already seen, the owner agreed that if the property was sold by himself or through any other agency than Lyman & Briggs he would pay the latter "a commission of two per cent on sale price." The legal and logical conclusion from the findings is, therefore, that plaintiff is entitled to judgment for the sum of two hundred and sixty dollars. It is not a valid objection to this that the court was without jurisdiction to award that amount. The suit having been brought to recover the sum of six hundred and fifty dollars the court had authority to direct judgment for any amount shown by the evidence to be due. In *Derby* v. *Stevens,* 64 Cal. 289, [30 Pac. 820], it is said: "If in the same action he demands a judgment for less than three hundred dollars against any of the defendants, the superior court has no jurisdiction to enter a judgment in plaintiff's favor against those defendants of whom he has so demanded less than three hundred dollars. But when the plaintiff has demanded three hundred dollars or more as against any defendant the district court had, and the superior court has jurisdiction to enter a judgment for less than three hundred dollars against said defendant."

"In ordinary legal actions the so called *ad damnum* clause of the complaint, when stated in good faith (*Fix* v. *Sussung,* 83 Mich. 561, [47 N. W. 340], 21 Am. St. Rep. 616, and notes) affords the test of jurisdiction, and, if the amount equals or exceeds three hundred dollars, the superior court obtains jurisdiction and may render judgment for any lesser sum the evidence may justify." (*Miller* v. *Carlisle,* 127 Cal. 330, [59 Pac. 785].)

Of course, a separate count in the complaint setting forth this theory would have been demurrable on jurisdictional grounds, but the whole transaction having been shown with-

out objection, and the court having found as aforesaid, the plaintiff should be awarded the relief to which he appears entitled.

The judgment is reversed, therefore, with directions to enter judgment for plaintiff for the sum of two hundred and sixty dollars.

Chipman, P. J., and Hart, J., concurred.