[S. F. No. 7805. In Bank.—April 6, 1916.]

## H. D. PERRY, Petitioner, v. GEORGE E. GROSS, as County Clerk of Alameda County, Respondent.

WRITTEN INSTRUMENTS—FUNDAMENTAL RULES OF CONSTRUCTION.—In the construction of any written instrument, whether constitution, statute, or contract, the most important duty of the court is to discover the true meaning of the instrument. Its endeavor is directed first to attaining an understanding of the purpose and object of the writing, and next to the giving to that purpose and object the fullest effect compatible with the meaning of the language through which that purpose and object find expression. Words, phrases, and sentences therefore are construed in contemplation of these fundamental purposes and objects, and when any doubt of their precise meaning is found to exist, aid in arriving at that meaning is drawn from the general rules and principles governing the construction of such doubtful language.

ID.—TIME FOR FILING REFERENDUM PETITIONS—FILING "AT SAME TIME."
Section 1 of article IV of the constitution, providing that all sec-

tions of a referendum petition circulated in any county shall be filed "at the same time," should be construed so as to disregard fractions of a day, and to render valid the filing of such sections if made upon the same day.

APPLICATION for a Writ of Mandate directed to the County Clerk of Alameda County.

The facts are stated in the opinion of the court.

H. H. McPike, Clinton G. Dodge, and McPike & Murray, for Petitioner.

Edward J. Tyrrell, for Respondent.

HENSHAW, J.—Petitioner having filed with the county clerk of the county of Alameda a referendum petition, thereafter and on the same day presented for filing another section of this petition, which section the county clerk refused to file. Mandate before this court was sought, compelling the county clerk so to do.

The question thus presented involves a construction of the language of the constitution which is as follows: "Each section of the petition shall be filed with the clerk or registrar of voters of the county or city and county in which it was circulated, but all said sections circulated in any county or city and county shall be filed at the same time." (Const., art. IV, sec. 1.) Respondent contends that under this language his duty was plain; that the constitutional requirement that "all said sections . . . shall be filed at the same time" compels him to refuse to file a section presented after a petition had been filed, even though presented upon the same day.

In the construction of any written instrument, whether it be a constitution, a statute, or a contract, the most important duty of the court is directed to discovering the true meaning of the instrument. Its endeavor is directed first to attaining an understanding of the purpose and object of the writing, and next to the giving to that purpose and object the fullest effect compatible with the meaning of the language through which that purpose and object find expression. Words, phrases, and sentences therefore are construed in contemplation of these fundamental purposes and objects, and when

any doubt of their precise meaning is found to exist, aid in arriving at that meaning is drawn from the general rules and principles governing the construction of such doubtful language.

The phrase here demanding construction is that which declares that all sections of the petition shall be filed *at the same time,* and the question before this court is not how lexicographers define the phrase, but rather what is the true meaning of this phrase as thus employed in the constitution?

The foregoing statement involves no novel rule of construction. It is a universal one, and it will be found that phrases such as the one under consideration employed in statutes or contracts (and the same rule of construction of course applies to a constitutional provision)—phrases such as "at the time," "at the same time," and "at the same time and place," are one and all subject to and given a reasonable construction in furtherance of what is determined from a consideration of the whole enactment to be its true purpose and object. Thus where a contract provided that no claim should be allowed unless the shipper, "made it in writing before or at the time the stock was unloaded," it was held that a written notice three days after the unloading of the stock was within the reasonable meaning of the contract. (*Rice* v. *Kansas Pac. R. R. Co.*, 63 Mo. 314.) In *Jenks* v. *State*, 39 Ind. 1, the statute provided that bills of exception in criminal cases must be made out and presented *at the time* of the trial, and it was held that such a bill made out at any time during the course of the trial was within the spirit and meaning of the statute. Construing an English statute limiting the liability of a shipowner for damages done by the collision of his ship to the value of the ship *at the time* of collision, it was held that this language meant *before* the collision, as necessarily the value would be much depreciated by the collision. (*Brown* v. *Wilkinson,* 15 M. & W. 391.) In *Gulf etc. R. R. Co.* v. *Warner,* 89 Tex. 475, [35 S. W. 364], there was under construction a statute declaring that to constitute two or more employees fellow-servants they must be "working together at the same time and place." The court held this not to mean identity of time and place, saying, "While 'at' indicates nearness in time and place, it does not demand an exact coincidence as to either." In *Dryberg* v. *Mercur Gold Mining & Milling*

*Co.*, 18 Utah, 410, [55 Pac. 367], where the Utah statute contained the same language, it is declared by the court that "the meaning of the phrases 'at the same time,' and 'at the same place,' often vary in view of their application."

It would seem that all such questions as this could have been avoided and the public welfare better conserved by language providing for the filing of such petitions at any time, up to a day fixed and certain. Such a provision would prevent the possibility of fraud and the possibility of a defeat of the public will, which, under the present condition of the law, may possibly take place by premature filings made through ignorance or design.

The construction of the law contended for by respondent, which construction necessitates the filing of all sections of the petition at the same instant of time, it is apparent lends itself to the defeat of the public will in many obvious ways. Thus to illustrate: At 10 o'clock a citizen presents for filing (as he has a perfect right to do) a petition containing ten names. It is filed. At 11 o'clock a petition containing a necessary and sufficient five thousand names is offered and *is refused filing because not presented at the same instant* of time with the petition containing ten names, and the expression of the desire of five thousand citizens to have a given measure submitted to the electors by the initiative or under the referendum is defeated by the act of one man.

It is not to be supposed that the constitution in placing this power in the hands of the people designed that the exercise of their rights under the initiative and referendum could thus easily be thwarted and destroyed, and a construction which would avoid this result is manifestly to be preferred, if it be reasonably possible within the language of the instrument, to one which accomplishes it.

It is certainly a permissible construction to hold that "at the same time," as used in the constitution, does not regard fractions of a day, and that filings of these petitions are good if made upon the same day. Not only is this construction permissible, but it is manifestly desirable, as it tends at least to that extent to further the will of the public, and at the same time imposes no added duty or labor upon county clerks.

It may be said that this construction would not avail in case some ignorant or designing person should file such a peti-

tion bearing but a few names some days in advance of the filing of a principal petition. With that question we are not here concerned. The declaration may be a sound one, and it may be that in the present condition of the law there is no way to avoid such a result. But the fact that this result—which is manifestly in hostility to the great purpose of the initiative and referendum—can be accomplished in one case, can furnish no reason to support a construction of the constitution which would make it possible in another case.

Let mandate issue as prayed for.

Shaw, J., Melvin, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.